UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED IN CLERKS OFFICE

SUFFOLK, ss.

2022 OCT -4 PM 12: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

BSI 254 WESTFIELD, LLC and
BSI 254 WESTFIELD MEMBER, LLC,

    Plaintiffs,

v.

NICHOLAS FIORILLO

    Defendant.

NO. 1:22-cv-11394-DJC

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR REMAND; REQUEST FOR EVIDENTIARY HEARING**

Defendant Nicholas Fiorillo ("Fiorillo") respectfully submits this memorandum of law, in opposition to Plaintiffs' Motion to Remand.

## PRELIMINARY STATEMENT

This is a breach of contract action against Defendant, in an attempt to collect an unlawful debt. Fraud upon the Court perpetrated in direct violation of 18 U.S.C. §1962 (c), which Plaintiffs have violated in both of the ways applicable under the law. The removal of cases by Defendant from State to Federal Court, has nothing to do with delaying anything. Justice delayed is justice denied, and the removals are based upon denial of due process under the law, and Defendant's right to a fair hearing.

## BACKGROUND

**Due Process of Law and Disorder**

On August 23, 2022, the Hon. Judge Ricciuti issued an Order[1] stamming from a scheduled hearing the day before, august 22, 2022, which Defendant was unable to attend, after the Boston area was deluged with over 2 inches of rain in an hour, causing highway flooding

---

[1] Exhibit A - Order by Judge Ricciuti of August 23, 2022.

which impacted bridge travel. There are several inexplicable inconsistencies set forth in that order, the tenor of which serves to further underscore the fact that Defendant will never have recourse or remedy, in a Court which repeatedly denies his constitutional right to a fair hearing. The discrepancies which exemplify this, are as follows:

- The traffic issues cited by Defendant on August 22, 2022, weren't "claims[2]," they were actual, weather-related issues which Judge Ricciuti had been made aware of, since Defendant kept in steady contact with the clerks to apprise them of the situation that day, a situation beyond his control.

- Whie the Order states that "the court instructed the court to issue a capias for Mr. Fiorillo's arrest if he failed to appear later in the day," this is both grammatically and factually incorrect. The court (Judge) instructed the clerk to advise Defendant, who had been in consistent contact to apprise the court of the road conditions into Boston, that if he came to the Courthouse he would be arrested because a capias had been issued by the Judge.[3] While Defendant did come to the Courthouse and did not end up being arrested, it is the disordering of the facts here that is the most troubling.

- Judge Ricciuti is adamant that Defendant has employed some sort of "stratagem" to avoid hearings, a mischaracterization which extended on the record into other proceedings and is patently false. For example, upon learning that a hearing had been scheduled for the week of August 8th, Defendant gave timely notice to the court and opposing counsel of pre-scheduled medical procedures resulting in a scheduling conflict. The Judge asked for medical documentation, and due to the private health information contained therein, Defendant did not electronically file it into the case for publication to the docket, but instead sent it to the clerk and asked that she provide it to the Judge.[4]

---

[2] Judge Ricciuti makes plain his opinion that the Defendant has fabricated legitimate reasons ("claims") for not being in attendance at hearings, and in so doing, makes plain his bias against a pro se litigant.
[3] Exhibit B - Clerk Van Meek email re: capias - August 22, 2022.
[4] Exhibit C - Email from Fiorillo to Clerk Van Meek of August 9, 2022.

- Judge Ricciuti ultimately defaulted Defendant for not being in attendance at the hearing, and repeatedly accused him thereafter of failing to furnish the required medical documentation[5], and in his Order made reference once again, to Defendant's "claim[6]" of a medical procedure. Judge Ricciuti's Order required that Defendant submit a response to Plaintiff's Motion for Default by 4:00 PM the same day (which Defendant did not receive timely notice of), that the response was to include a separate affidavit setting forth the exact location from which Defendant started in his <u>alleged</u>[7] journey to court, the exact time of departure, and the exact details of travel, and shall state whether Defendant had any intention or expectation of arriving to court late or made any oral or written statements that he intended or expected to arrive late.

- Although Defendant did file this response the following day to the court's specifications, Judge Riccuti accused him of failing to submit the requested Affidavit[8], just like he accused him of failing to answer Plaintiff's contempt complaint[9] and failing to provide the requested medical documentation.

As reflected in Paragraph 5. of the Order appended hereto as Exhibit A, a hearing on the matter of contempt by Defendant, most notably contempt of a Court Order Defendant finds just as ambiguous now as he did at the time of issuance, was scheduled for 9:00 am on August 25, 2022. As will be set forth below, the Clerks engaged in nothing short of procedural hijinx when it came to jockeying the docket around, to the intended detriment of a pro se litigant who had to rely on the veracity of the Clerks, which became increasingly futile.

On August 23, 2022 at shortly past 10:00 am, Clerk Van Meek sent out an email advising that the time for the hearing on the 25th had been changed to 11:00 am.[10] To Defendant's dismay on the morning of the 25th, as he headed to Boston for the 11 O'Clock hearing, he was contacted

---

[5] Exhibit D - Medical documentation provided August 9, 2022 to Clerk Van Meek.
[6] The clear implication by use of the word "claim," is that the Judge thinks Defendant is a liar.
[7] "Allege" is just another word for claim, and more evidence of bias against Defendant.
[8] Exhibit E - Defendant's Affidavit explaining circumstances of August 22, 2022.
[9] Exhibit F - Defendant's Answer to Plaintiff's Contempt Complaint.
[10] Exhibit G - Van Meek email of August 23, 2022.

by an attorney who happened to be at the Courthouse, who advised him that the hearing had started at 9:00.[11] Although both Judge Ricciuti and Clerk Van Meek knew full well why Defendant was not present, they played along as if they expected differently. Under such circumstances, it is not possible to avoid the fact that Defendant has been egregiously denied his Constitutional rights to due process.

Judge Ricciuti stated on the record during the August 25th hearing, that he did not feel that he had any bias against Defendant whatsoever. He then went on to say that *both he and counsel for Plaintiffs* had done some research, and found a case within which a party was alleged to have offered "incredible" excuses for their inability to attend hearings, concluding with: "this case was exactly that."[12] It didn't matter whether or not what Defendant stated was true, since Judge Ricciuti simply had no intention of believing him. That wouldn't fit the narrative.

Defendant endeavored in every way possible to enlist the assistance of the Superior Court Judges, and candidly advised Judge Ricciuti of the litany of difficulties he was experiencing with Court Clerks, who were clearly acting so far outside of professional boundaries as to merit sanctions for misconduct.[13] Defendant is compelled to prevent any other pro se litigant from being subjected to what he has been by some of the Clerks of the Superior Court, and has filed the appropriate complaints against them[14] and other officers of the Court as applicable, so that an ensuing investigation can hold the culpable parties accountable, and prevent a repeat of the travesty that this defendant was subjected to. A series of emails appended as an Exhibit hereto, is a sampling of the level of control the clerks have over Courthouse proceedings and the disadvantage faced by a pro se litigant attempting to exercise his rights to due process only to find an exercise in futility.[15]

---

[11] Exhibit H - Actual start time of hearing on August 25, 2022 of 9:00 am, not 11:00 am as Defendant was advised.
[12] Exhibit I - See lines 16-22 for relevant reference to bias by Superior Court Judge.
[13] Exhibit J - Email from Defendant to Judge Ricciuti of August 22, 2022 re: problems with the court clerks.
[14] Complaint against Clerks Van Meek, Brooks and Powers, to the attention of Chief Justice Brieger.
[15] Exhibit K - Email exchanges between Fiorillo and Clerks, re: problems with Zoom, filings and hearings.

While Judge Ricciuti has denied Defendant his Constitutional rights to due process with impunity in Suffolk Superior Court, he could not have done so in Federal Court. Ever mindful of the fact that the crux of each case against Defendant in the Superior Court is an action for the collection of unlawful debt, these complaints on their face stand in clear violation of 18 U.S.C.§1962 (c). From a federal standpoint, the conduct displayed by Judge Ricciuti against Defendant, constitutes repeated violations under 28 U.S. Code § 455 - Bias or prejudice of judge:

> *Whenever a party to any proceeding makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.*

Judge Ricciuti has abused his discretion and materially prejudiced Defendant in both the underlying case and the contempt case, beginning the week of July 6, 2022. As to the matter of contempt, the Court order referenced in Plaintiff's motion which Defendant was found to be in contempt of, was anything but "unambiguous." In fact, it was ambiguous to the point that during a subsequent hearing, the Judge, opposing counsel and Defendant, each had differing interpretations of its intent.

As to the matter of intent, when Judge Salinger granted Defendants' Motion for a Stay in early June, he specifically expressed the intent that both sides follow Rule 9C, and work out their differences outside of courtroom proceedings. Despite repeated attempts by Defendant to do just that, Plaintiffs have steadfastly declined, and yet it was the defendant who was found to be in contempt. After Judge Ricciuti found Defendant in contempt and defaulted him in error, he had ex parte communications with Judge Kazanjian, who was presiding over one of the other cases. Judge Kazanjian went on to emulate Judge Ricciuti in his bias towards Defendant, also implying

that he had been untruthful. She not only defaulted Defendant but Defendant's wife, who could not leave the home to attend a hearing on the day after Defendant's medical procedure, due to providing care to Defendant as per physician directives.

No common person or unbiased tribunal, would fail to unanimously conclude that Judge Ricciuti, from the outset of his involvement in Defendants' cases, harbored a direct and materially prejudicial bias, against a pro se litigant. This falls squarely under the purview of the "broader inherent common law and constitutional powers that supervise the administration of justice." Foley v. Lowell Div. of the Dist. Court Dep't, 398 Mass. 800, 804, 501 N.E.2d 1151 (1986). See: Matter of DeSaulnier (No. 1), 360 Mass. 757, 759, 274 N.E.2d 454 (1971).  As also under G.L. c. 211, § 3, See: Commonwealth v. Bastarache, 382 Mass. 86, 102, 414 N.E.2d 984 (1980).  "In matters concerned with the administration of the courts and the trial of cases, such may impose requirements (by order, rule or opinion) that go beyond constitutional mandates."

Throughout the underlying contempt actions, the most recent and troubling being the referral of Defendant for criminal investigation due to a complete mischaracterization of his character, Judge Ricciuti has systematically aided and enabled Plaintiffs' counsel to repeatedly violate the Rules of Civil Procedure, in violation of 42 U.S.C. § 1983 (refusing to prevent, and/or aiding and abetting Plaintiff's counsel in obstruction of justice and malicious abuse of process). Due to Judge Riccutti's clear pattern of materially prejudicial "shotgun rulings," Defendant's basic rights and liberties of due process have been consistently denied. Judge Ricciutti refused to conduct a fair or reasonable show cause hearing for contempt, or allow Defendant to present his legal positions, in a fair and impartial manner.

The pro se litigant's rights and interests, namely the right to a fair hearing guaranteed by Constitutional Amendment, must be acted "swiftly and firmly" upon by the Court to protect, and by virtue of its historical and chronic bias against Defendant, the State provides no redress or remedy.  Defendant has been accused of not filing responses which were filed, of not

providing medical documentation which was provided, and despite making it clear repeatedly, that all relevant information within Defendant's possession, custody and control has already been provided, Defendant is accused of noncompliance.

Judge Ricciuti has clearly disavowed Defendant of: 1. Proper service under 65.3 10/20 rule; 2. A fair and proper allowance of time to prepare for such show cause hearing; 3. Defendant's 1st, 14th Amendment and Article 29 rights to free speech and oral arguments without the threats of jail; 4. Rights free from Judge Ricciuti's clear and material prejudicial bias and; 5. Prudent judicial oversight in disposing of the clearly nefarious and tactical complaint for contempt and monetary demands for $220,000 dollars, coupled with the constant threat of incarceration.

Judge Ricciuti and his clerks, often in open court and through multiple ex-parte communications, have conspired with the Plaintiffs counsel, clerks Van Meek, Brooks and Powers, as well as with Judges Krupp and Kazanjian, against Defendant. From his July 6th ex parte short order of notice, through the July and August hearings, Judge Ricciuti was steadfast in his position, which any reasonable person would see amounted to extremely unfair treatment, founded in bias harbored by this Judge, against pro se Defendant Fiorillo. Judge Ricciuti has advanced a judicial advantage designed to disavow any hopes that, pro se, Defendant would ever be able to receive a fair and proper hearing in Suffolk Superior Court.

Whereas in any other fair and equitable, reasonable, and unbiased courthouse in the United States, with regard to those who are so gainfully employed therein, and the clerk(s), officers and Judge(s) who preside therein, would have rendered a true, fair and equitable administration through this entire legal saga, of the defendant's multiple cases. Defendant has been threatened repeatedly with incarceration, oftentimes for simply speaking. On the record, Judge Ricciuti stated aloud at the July 25th 2022 hearing, prior to hearing any testimony from either side, that he had "made up his mind," before he had allowed Defendant to present his position.

Defendant, under seal, has provided everything that was requested of him, that was in his possession, custody and control. Despite this reiterated fact, the court was clear in its position from the outset of the first hearing. A position which materially prejudiced that of the defendant, a defendant who would never receive a fair and just ruling, decision or judicial outcome, not from Judge Ricciuti or from Judge Kazanjian.

## ARGUMENT

Jurisdiction in this Court arises under 42 U.S.C. § 1983 (civil action for deprivation of rights), § 1985 (3), conspiracy to interfere with civil rights, § 1986 and § 1988 (proceedings in vindication of civil rights) as well as under the provisions of 18 U.S.C. § 1341, §1511 and § 1961 through § 1967. Jurisdiction in this Court is authorized by Fed. R. Civ. P. and arises under the doctrine as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

While civil rights, including the Constitutional right to due process of law should not be restricted by "section" to the exclusion of citizens who cannot claim membership in a protected class, removal that may be cited as "unfounded" under § 1443 is proper under § 1446, pursuant to 28 U.S.C. § 1331 and, in the alternative, pursuant to 28 U.S.C. § 1332. Mindful that Defendant can only remove actions which could have originally been filed in federal court, the presence or absence of federal question jurisdiction provides that federal jurisdiction exists when a federal question is presented on the face of the plaintiff's "properly pleaded complaint."

There is no question in the mind of Defendant, that none of these complaints have been properly pleaded. They are retaliatory in nature, and in addition to violating 18 U.S.C. §1962 (c), counsel for Plaintiffs have committed repeated abuse of civil process by filing frivolous matters in an attempt to coerce and extort money from Defendant neither due nor owing to Plaintiffs. Plaintiff's complaint, therefore, was not "properly pleaded," since it is founded upon the collection of an unlawful debt which, on its face, is in violation of 18 U.S.C. § 1962 (c).

Although in instances under which a complaint does not specifically allege a cause of action subject to federal law, the defendant bears the burden of showing that one or more of the causes of action are subject to federal court jurisdiction, as to the action at hand, the very cause of action it springs from is subject to federal law. Given the difference between federal and state court litigation which includes but is not limited to different applicable or persuasive law, and lengthier discovery, the fact that Defendant has been unable to receive any discovery in Superior Court, possibly to prevent him from raising the clear and present federal issue as a defense, serves to further underscore the reasons why this action and those related must remain in federal Court.

Plaintiffs here have deliberately plead federal law claims as arising solely under state law, with the intent of shifting the burden to Defendant that Plaintiff's state law claims do, in fact, arise under federal law, and therefore a federal question jurisdiction sufficiently exists so as to prevent Plaintiff's inevitable motion to remand. Defendant has met this burden, so while the "well-pleaded complaint rule" may, in general, permits plaintiff to "avoid federal jurisdiction by exclusive reliance on state law," the better argument here is that plaintiffs' claims are more properly litigated in federal court.

Defendant properly invokes the artful pleading doctrine, the "corollary" to the well-pleaded-complaint rule, standing on the principle that a plaintiff may not defeat federal subject-matter jurisdiction, simply by the "artful pleading" of a complaint as if it arises under state law, while in fact, the plaintiff's action is, in essence, as it is here, based on federal law. (see: Sullivan v. Am. Airlines, 424 F.3d 267, 271 (2d Cir. 2005) (citing Rivet v. Regions Bank of La., 522 U.S. 470, 475-76 (1998); see also NASDAQ OMX Grp. v. UBS Sec., 770 F.3d 1010, 1019 (2d Cir. 2014).

The artful pleading doctrine permits the Court to "read into a complaint elements that the plaintiff omitted," and "construe the complaint as if it raised the federal claim that actually underlies the plaintiff's suit." Sullivan, 424 F.3d at 271-72 (citing Rivet, 522 U.S. at 475). The allegation of any impropriety of a case being removed to the federal courts merely because the federal issue involved is presented by the defense, is defeated when such issue is presented on the face of the plaintiff's claim as well. Accordingly, courts have historically left no doubt that an issue supporting federal question jurisdiction could be raised by the defense, and because the complaint in ejectment raises a federal issue directly, removal is properly sustained. A genuine and present controversy, not simply a possible or conjectural one, exists with reference thereto, and the controversy in question has been disclosed upon the face of the complaint and as such, stands unaided by the answer or by the petition for removal.

In Southern Pacific Railroad v. California, Carson v. Dunham and Bock v. Perkins, the courts continued to affirm that a federal issue arising in the defense of an action, allows jurisdiction on removal of that case from the state court. Current federal law honors the concept that the doctrine of pendent jurisdiction, is clearly based on the premise that litigants presenting federal issues, are entitled to have them adjudicated in the federal courts. There is nothing to evidence a more likely showing of prejudice, if the federal question is raised by the defendant rather than by the plaintiff.

While prior justification of the well-pleaded complaint rule has been that the litigant consigned to the state courts can always seek Supreme Court review of the federal issues presented by the case, this argument historically ignores the reality that in only an extremely small percentage of the cases, does a litigant seeking Supreme Court review actually receive it, raising a serious problem of state courts mishandling federal issues, which Defendant seeks to avoid. Moreover, to the extent that the result of a case may be heavily influenced by the trial court's findings of fact, state court decisions in cases involving federal issues end up as being unreviewable by the Supreme Court, even if the Court does accept the case.

The presence of an outcome determinative question of federal law, serves to ensure that the parties will vigorously litigate the issue. The importance of the outcome of the case, in turn ensures that the courts will not be asked to render advisory opinions in violation of the case-or-controversy clause. One of the essential elements the Court considers in a case or controversy matter, is an injured plaintiff. The requirement is that a plaintiff show that he or she has suffered "injury in fact," as a key requirement of the Court's doctrine of standing. Since any Plaintiff bringing an action to collect an unlawful debt suffers no injury, the lower Court must not be permitted to manipulate the doctrine to serve Plaintiff's objectives.

Another serious issue faced by this pro se litigant, is that when the Court wants to reach the merits of a case, the standing doctrine is often relaxed. However, when the Court wishes to avoid deciding the merits of a case or when it wants to shut a Defendant's case out of court, the requirements for standing are tightened. This double standard underscores the importance of determining when a potentially dispositive federal issue is sufficiently important to merit the invocation of federal question jurisdiction.

I. **THE COURT SHOULD STAY THIS ACTION PENDING CONSOLIDATION WITH RELATED CASES.**

For the reasons set forth in Defendant's motion to consolidate, this Court should, in the interests of judicial economy and to ensure consistent rulings on the jurisdictional issues raised in this motion, stay proceedings in this action pending completion of transfer of the related case(s) involving Defendant.

II. **CONSOLIDATION IS WARRANTED BECAUSE PROPERLY JOINDERED PLAINTIFFS ARE FRAUDULENTLY JOINED IN MOTIVE.**

Plaintiffs' motion to remand does not meaningfully address the fact that the basis for the actions against Defendant, all involve collection of unlawful debt, in direct violation of 18 U.S.C. §1962 (c). Such is the similarities in fraudulent cause of action that the State Superior Court clerks have mistakenly interchanged Plaintiff names when docketing items filed into the

cases. Thus, while joinder is appropriate, it is the joined or common basis for these actions which is fraudulent.

## III.   PLAINTIFFS' REQUEST FOR COSTS AND FEES SHOULD BE DENIED.

Plaintiffs' request for costs and fees should be denied. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). As set forth above, Defendant's bases for removal are objectively reasonable, and Plaintiffs' claims to the contrary lack merit.

## CONCLUSION

Plaintiffs have conveniently omitted pertinent information from their motion. Not only is the underlying issue in violation of 18 U.S.C. §1962 (c), Defendants' civil rights to due process have not only been violated, they have been wholly trampled on by the State court, where there is no remedy, no rights and no recourse, and where Defendant has not even been able to obtain discovery.

There could be no greater, or more obvious and crystal clear totality of the record, of this Judge's material prejudicial bias against Nicholas Fiorillo and his associated affiliated corporations, and the interrelated cases in front of Boston Suffolk Superior Court. As a pro se litigant, Defendant has attempted to seek every avenue possible in order to receive a fair hearing, and yes, he *would* rather not have been engaged in any proceeding involving the collection of unlawful debt. If the opposing parties truly had genuine interest in trying to equitably resolve differences, they would have accepted Defendants' repeated offers to do so. Therefore, the only thing that Plaintiffs are entitled to here, is a dismissal of their case, for failure to state grounds upon which relief may be granted.

For the foregoing reasons, Plaintiffs' motion to remand should be DENIED. The Court should stay proceedings in this case pending consolidation of similar cases.

Respectfully submitted,

NICHOLAS FIORILLO

/s/ Nicholas Fiorillo
Nicholas Fiorillo
3 Kales Way
Harwich Port, MA 02646-1936
Tel: (508)-776-7219
metrowestrealty@yahoo.com

September 30, 2022

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all counsel of record by Electronic Mail, within the three-day extension in Rule 26(c) for filing by regular mail.

/s/Nicholas Fiorillo

### LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify, as Defendant, that Plaintiffs made no attempt in good faith to resolve or narrow the disputes addressed in their motion. Mr. Kreuzer, counsel for the Reach and Apply Defendants in another action, was threatened by email at the end of August that if he did not immediately withdraw the removal notice, Plaintiffs' counsel would seek disciplinary sanctions against him with the Bar Association. There was no talk of any convenient discussion of the matter with Mr. Kreuzer, just an ultimatum to withdraw the notice or face sanctions. I was never contacted directly in this regard, and since the filing of Plaintiffs' motion, Mr. Kreuzer has had his access to PACER suspended, and a Bar action opened against him.[16]

/s/Nicholas Fiorillo

---

[16] Exhibit L - Affidavit of Neil Kreuzer.